# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**MARGRET M. LASSICH,**

      **Plaintiff,**

vs.                                                                                       **Civ. No. 01-0167 JP/RLP**

**JO ANNE B. BARNHART,**
**COMMISSIONER, SOCIAL**
**SECURITY ADMINISTRATION,**

      **Defendant.**

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

This matter is before the Court on the motion of Plaintiff, Margret M. Lassich, to Reverse or Remand Administrative Agency Decision denying her claim for supplemental security income, filed November 23, 2001.(Doc. 9),

**I.**     **Facts/Procedural Background**

Plaintiff, then age twenty, filed an application for supplemental security income benefits alleging disability due to obesity, depression, sleep apnea, diabetes, arthritis, ligament laxity, flat feet, and knee weakness. (Tr. 53-55, 61). The medical records establish that she is obese, suffers from severe, obstructive sleep apnea, elevated blood pressure, depression, non-insulin dependent diabetes and subluxation of her right knee, with both knees in valgus and legs relatively laterally displaced.

Plaintiff's claim was denied at the first and second levels of administrative review, and by an

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

Administrative Law Judge ("ALJ" herein) following a hearing. The ALJ found that she had severe impairments of diabetes melitus, obesity, sleep apnea and depression which did not qualify as per se disabling at step three of the sequential evaluation process. (Tr 15). He further found that despite these conditions, Plaintiff retained the residual functional capacity for simple, unskilled, light and sedentary work. (Tr. 23-24). He then applied the Medical-Vocational Guidelines ("grids" herein) and found that Plaintiff was not disabled. (Tr. 24-25). Plaintiff appealed the ALJ's decision to the Appeals Council which declined review on October 24, 2000, making the ALJ's denial of benefits of Commissioner's final decision for judicial review.

Plaintiff seeks review under 42 U.S.C. §405(g) asserting that the ALJ made the following errors in denying her claim: (1) Failing to analyze her obesity pursuant to the criteria set out in Social Security Ruling 00-3p, alternatively, failing to develop the record fully and fairly to determine whether her obesity met or equaled Listing §9.09(A); (2) Applying the grids conclusively despite finding that she suffered from "severe" non-exertional impairments; and (3) denying her a full and fair hearing due to bias, substituting his opinions for that of physicians and denying Plaintiff the opportunity to fully present her case.

## II. Standard of Review and Applicable Law

This Court reviews the Commissioner's decision to determine whether the record contains substantial evidence to support the findings, and to determine whether the correct legal standards were applied. **Castellano v. Secretary of Health & Human Services**, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" **Soliz v. Chater**, 82 F.3d 373, 375 (10th Cir.1996) (quoting **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In reviewing

2

the Commissioner's decision, I cannot weigh the evidence or substitute my discretion for that of the Commissioner, but I have the duty to carefully consider the entire record and make my determination on the record as a whole. **Dollar v. Bowen**, 821 F.2d 530, 532 (10th Cir.1987).

The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled. **Reyes v. Bowen**, 845 F.2d 242, 243 (10th Cir.1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. **Sorenson v. Bowen**, 888 F.2d 706, 710 (10th Cir.1989). The burden of proof is on the claimant at steps one through four; the Commissioner bears the burden of proof at step five. **Id.**

**III.    Discussion**

    **A.    Evaluation of Plaintiff's Obesity at Step Three of the Sequential Evaluation Process.**

        **1.    The Standards of the Revised Listing Are Applicable to Plaintiff's Claim.**

At the time Plaintiff filed her application for SSI, obesity was a listed impairment considered at step three of the sequential evaluation process. Disability was conclusively established through evidence of specified heights and weights, combined with additional medical findings. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §9.09 (1998); **Harris v. Apfel**, 152 F. Supp. 1261, 1266 (D. Kan. 2001). On August 24, 1999, the Administration published a final rule in the Federal Register which deleted obesity from the Listing of Impairments and adopted a more restrictive standard which became effective October 25, 1999, two days before the ALJ's decision in this case. **See Revised Medical Criteria for Determination of a Disability, Endocrine System and Related Criteria**, 64 Fed.Reg. 46122-46129 (1999). Accordingly, I find that the revised criteria, rather than former Listing §9.09

are applicable to Plaintiff's claim.²

The ALJ utilized Listing §9.09 in evaluating Plaintiff's claim. (Tr. 22). The issue before the court is whether his decision also supports a finding of not disabled at step three utilizing the revised criteria.

The appropriate evaluation of obesity at step three of the sequential evaluation process involves consideration of the effect of obesity on the musculoskeletal, respiratory and cardiovascular body system listings.³ **Id**. at 2412, 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.00F, §3.00I, §4.00F. Plaintiff alleges that her obesity has caused disabling musculoskeletal impairments and sleep apnea, a respiratory impairment.

### 2. Plaintiff's Sleep Apnea Is Not Disabling *Per Se*.

Is it undisputed that Plaintiff suffers from severe, obstructive sleep apnea.⁴ (Tr. 228-238). This condition can qualify as a listed impairment provided additional specified medical conditions are present: chronic cor pulmonale or functional impairments described under organic mental disorders. 20 C.F.R. Pt 404, Subpt. P, App.1, §3.10 § 3.09, §12.02. In order to qualify as disabling *per se*, all

---

²Plaintiff also argued that in order to adequately develop the record with regard to her claim under former listing§9.09(A), the ALJ was required to obtain records from four care providers in order to determine whether she had the requisite x-ray findings of arthritis in an effected joint or her lumbosacral spine. (Docket No. 10, p. 15-17). This argument fails because §9.09 is not applicable. Even if §9.09 were applicable, there is substantial evidence that Plaintiff did not have limitation of motion, also required for a finding of *per se* disability under former Listing§9.09(A). (See Tr. 192-193)

³**Social Security Ruling, S.S.R. 00-3p,** addressing new criteria for the evaluation of obesity, did not become effective on May 15, 2000.

⁴Following her evaluation for sleep apnea at the University of New Mexico Hospital, Plaintiff was provided a C-PAP machine which improved both her oxygenation and sleep quality. She was asked to return for follow-up to address the effectiveness and fit of the C-PAP. (Tr. 228, 234). She discontinued use of the C-PAP after one month, stating that it caused frequent sleep interruption. (Tr. 188). There is no evidence that she returned for the recommended follow-up visit to address this complaint.

4

the criteria of the listed impairment must be present. **Sullivan v. Zebley** 493 U.S. 521, 530 (1990).

The record is devoid of any medical evidence that would support a finding of chronic cor pulmonale. The ALJ evaluated Plaintiff's mental functioning under Listing §12.04 (affective disorders), not under §12.02 (organic mental disorders). Although the underlying signs and symptoms of these disorders are different, each requires the same level of severity to qualify as *per se* disabling.[5] Because the ALJ conducted the applicable severity analysis, I find he applied correct legal principles at step three of the sequential evaluation process in evaluating Plaintiff's sleep apnea.

### 3. Plaintiff's Obesity Combined with Her Musculoskeletal Impairment Is Not *Per Se* Disabling.

Plaintiff alleged knee pain, the inability to walk more than a couple of blocks, and painful popping of her right knee (Tr. 270-273). The medical record indicates that despite abnormalities of her lower legs[6] and increased lordotic curvature of her spine (Tr. 189-190), she walked with an apparently normal gait and had full range of motion (Tr. 189-190, 192-193). Further, her treating physicians have all encouraged increased physical activity, including walking, swimming and use of an aerobic glider. (Tr. 135, 142, 140, 126, 227).

The ALJ stated that he considered Listing §1.00 (Musculoskeletal system) in evaluating Plaintiff's condition at step three. (Tr. 15). He noted correctly that the medical evaluation by Dr.

---

[5]To be disabling *per se,* both conditions require two of the following: 1) Marked restriction of activities of daily living; or 2) marked difficulties in maintaining social functioning; or 3) deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); 4) or repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

[6]Valgus lower legs with legs relatively laterally displaced, positive patellar apprehension test right knee, tenderness over the medial aspects of the knees, knee laxity. (Tr. 189-190).

Nillo indicated that despite her obesity, Plaintiff had no functional limitations in terms of joint range of motion or ability to walk or stand. (Tr. 22, 188-195). Accordingly, there is substantial evidence that Plaintiff's obesity, combined with her musculoskeletal impairment does not meet or equal a listed impairment under Listing § 1.00.

Based on the forgoing, I find that the ALJ applied correct legal principles in finding Plaintiff not disabled due to obesity at step three of the sequential evaluation process, and that substantial evidence supports his finding.

  **B.**  **Application of the Medical-Vocational Guidelines**

Plaintiff is a "younger" individual, with the equivalent of a high school education and no significant work background. (Tr. 25, 53, 246, 114, 248). She has complained of depression since October, 1995 (Tr. 124), and began counseling with Wilma Cordova, MSM, LISW, in September 1996. (Tr. 207).

Plaintiff was formally evaluated by Michael Hickey, M.D., a psychiatrist, on March 28, 1998. (Tr. 152-154, 205). She complained of depression, irritability, lack of ambition and energy, frequent crying spells and insomnia. On mental status examination, Dr. Hickey found Plaintiff to be alert, oriented, pleasant, cooperative, to have a good sense of humor and talkative. She had no problems with immediate recall. She had some hesitation with tasks requiring concentration, but was able to perform the tasks accurately and quickly with the slightest encouragement. Her vocabulary indicated that she read a great deal. She had difficulty with mathematics and making change. There was no evidence of disordered thinking or other cognitive deficits. Based on interview, observation of Plaintiff's interaction with her mother and mental status examination, Dr. Hickey diagnosed major depression, chronic, mild (Axis 1) and dependent personality traits (Axis II). He encouraged Plaintiff

to consider taking something for her depression, to remain in school, seek counseling and initiate a program for weight reduction and control of diabetes.

Plaintiff was evaluated on March 30, 1998, by Michael Winsten, a psychistrist, and Deanna. Smith, M.S. L.M.F.T. (Tr. 179-187). On mental status exam, Plaintiff had appropriate dress and hygiene, good eye contact and appropriate mannerisms. Her mood and affect were assessed as depressed and nervous "per report." She had no visual or auditory hallucinations, was oriented to time, place and person, and demonstrated good past and present memory. In assessing Plaintiff's thinking, Ms. Smith noted "no response initially - abstract when gave response to proverbs." Plaintiff's mental condition was diagnosed as major depressive disorder, recurrent, mild (Axis 1), with a GAF of 60[7] (Axis IV). (Tr. 187). In addition, an undated form titled "Basic/Assessment Protocol, Biopsychosocial Screen" contained in the records of the Counseling Center indicated that Plaintiff had "no difficulty" with activities of daily living[8], community support[9], community activity[10], and that she was able to satisfy her health needs. (Tr. 219).

Plaintiff began taking Paxil, an anti-depressant shortly before June 18, 1998, and she reported no side effects from this medication. (Tr. 178). On that day she was again assessed as pleasant,

---

[7]Axis V is the Global Assessment of Functioning Scale ("GAF"). A GAF of 51-60 indicates: "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). **Diagnostic and Statistical Manual of Mental Disorders** (4th Ed.) p. 32

[8]". . . is able to obtain/maintain his/her basic daily needs regarding food, clothing hygiene, money management and safety."

[9]". . . is able access and/or utilize a "natural" support system to meet his/her satisfaction (may include family, friends, neighbors and/or other community resources."

[10]". . . is able to satisfy his/her recreational/social needs and/or vocational/educational objectives."

7

intelligent, and having a good sense of humor. She continued to complain of multiple depressive symptoms, but stated that "she has managed to cope and function adequately." Id. (Tr. 177). At the time of her administrative hearing on September 30, 1999, Plaintiff was taking Prozac for depression, which she felt was making her more alert. (Tr. 262-263).

The ALJ found that Plaintiff's mental impairment:

> . . . might produce some degree of difficulty in her ability to work independently and handle stress and changes in the workplace, but I find overall that she retains the capability to perform the mental, social, and occupational demands of simple, unskilled work, with no more than moderate limitations in any area of functioning, Her mental status examinations shown in this record have been essentially normal in terms of her orientation, memory, concentration, and cognitive abilities. Medical professionals consistently described her as alert, pleasant, cooperative, and talkative, with no evidence of disturbed thinking. Dr. Hickey characterized her depression as mild in March 1998, as did Dr. Winsten and Ms. Smith just a few weeks later. They rated her GAF in the moderate range of 60.

(Tr. 22-23). The ALJ then determined that Plaintiff had the mental capacity for "at least simple, unskilled tasks" in the light and sedentary exertional range. (Tr. 24).

Plaintiff contends that the ALJ erred by applying the grids conclusively despite Plaintiff's severe mental impairment of depression, a non-exertional impairment. She seeks remand in order to obtain the testimony of a vocational expert as to the impact of her mental impairment on the occupational job base. (Docket No. 10, pp. 12-14).

Plaintiff initially misconstrues the significance of the ALJ's finding the her depression was a severe impairment. In effect, Plaintiff argues that the ALJ is precluded from utilizing the grids whenever a severe nonexertional impairment is present. The ALJ found Plaintiff's depression to be "severe" at step two of the sequential evaluation process. The showing in step two is a *de minimis*

8

showing of severity which is designed to identify "those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled...." **Bowen v. Yuckert**, 482 U.S. 137, 153 (1987). Due to the incremental nature of the sequential process, a finding at step two that medical evidence establishes an impairment, does not preclude, and may be entirely consistent with, a contrary finding in an evaluation of severity of any particular impairment.

As a general rule, the grids may not be used conclusively if the claimant has nonexertional impairments that limit the ability to do the full range of work within a classification. **See Thompson v. Sullivan**, 987 F.2d 1482, 1488 (10th Cir. 1993); **see also** 20 C.F.R. §416.969(c)(2) (stating that "[i]f your impairment(s) and related symptoms, such as pain, only affect you ability to perform the nonexertional aspects of work-related activities, the [grids] do not direct factual conclusions of disabled or not disabled.). However, they may be used to direct a conclusion if the claimant's nonexertional impairments do not significantly reduce the underlying job base. **See Evans v. Chater**, 55 F.3d 530, 532 (10th Cir. 1995) (holding that the ability to perform a "substantial majority" of work in RFC assessment suffices for purposes of the grids).

The record contains substantial evidence to support the conclusion that Plaintiff's mental condition does not impair her ability to perform the mental requirements of unskilled work. The ALJ considered all the evidence submitted, including the evaluations by treating and examining mental health care providers, and he discussed the evidence he considered in completing the psychiatric Review Technique Form, as required by **Cruse v. United States Dep't of Health & Human Services**, 49 F.3d 614, 617-618 (10th Cir. 1995).

The ALJ properly relied on the grids and was not required to obtain the opinion of a vocational expert because substantial evidence supports the determination the Plaintiff's psychological

impairments do not limit her ability to perform unskilled sedentary or light work. **See Eggleston v. Bowen**, 851 F.2d 1244, 1247 (10th Cir. 1988) (presence of nonexertional impairment does not preclude use of grids if nonexertional impairment does not limit claimant's ability to perform work).

    C.    **The ALJ's Demeanor and Plaintiff's Right to a Full and Fair Hearing.**

Plaintiff final claim of error centers around the manner in which the ALJ conducted the administrative hearing. She contends that the ALJ's deprived her of a full and fair hearing by: 1) repeatedly relating her impairments to his personal experience with the same impairments; 2) asking Plaintiff minimal questions, making undue comments on her impairment and then ordering her representative to speed up his questioning; 3) Cajoling or disparaging Plaintiff and her mother, and relating his own diagnosis of Plaintiff's condition rather than asking questions designed to adequately develop the record, and 4) making rude comments that demonstrated his misunderstanding of or bias against Plaintiff's personality disorder.

A review of the record demonstrates that the ALJ frequently referred to his own medical conditions, related them to Plaintiff's medical diagnoses, and lectured Plaintiff and her mother. He did not, however, engage in questioning that was coercive, intimidating and totally irrelevant, nor can his one request that Plaintiff's representative speed up his questioning be considered a refusal to receive relevant evidence. **See, e.g., Ventura v. Shalala**, 55 F.3d 900 (3rd Cir. 1995). At the end of the hearing, the Plaintiff's representative stated he had no further questions.[11] (Tr. 311). The ALJ questioned Plaintiff in detail about her subjective complaints, and allowed Plaintiff's mother to testify at length. He based his decision on substantial evidence from Plaintiff's treating and examining

---

[11] Plaintiff contends that the ALJ's question was limited to further questioning of Plaintiff's mother. The attorney did not attempt at that time to reinitiate questioning of Plaintiff or her mother.

physicians, not on his personal experience. While a claimant is entitled to have the evidence evaluated by an unbiased ALJ, the ALJ's statements, taken as a whole, must evidence an unalterable opinion or closed mind on the merits of the claim in order to remand on the basis of allegations of bias or prejudice. **See Waring v. Delo**, 7 F.3d 753, 759 (8th Cir. 1993) ( mild judicial intemperateness does not overcome the presumption of judicial impartiality). Viewing the transcript as a whole, I do not find that the ALJ's demeanor at the hearing evidenced bias or that it deprived Plaintiff of a full and fair hearing.

**IV.   Recommended Disposition**

For the reasons stated above, I recommend that Plaintiff's Motion to Remand be denied and that the decision of the Commissioner, denying Plaintiff's application for Supplemental Security Income benefits be affirmed.

**RICHARD L. PUGLISI**
**UNITED STATES MAGISTRATE JUDGE**